**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**El PASO DIVISION**

2022 FEB -7 AM 9:57

| | |
|---|---|
| **BRANDON CALLIER,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **JONATHAN CRISLER, ROBERT WILSON, THE ALLSTATE CORPORATION,** a Delaware Corporation, and **JOHN DOES 1-4** | § |
| | § |
| **Defendants.** | § |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. The Plaintiff is Brandon Callier, a natural person, and was present in Texas for all calls, in this case in El Paso County.

2. Defendant JONATHAN MCKINLEY CRISLER ("Crisler") is a natural person, resident of Dallas County, Texas, principal owner of the Allstate Insurance Agency located at 1350 N. Buckner Blvd, STE 218, Dallas, Texas 75218 and can be served at 465 Stone Canyon Drive, Sunnyvale, Texas 75182.

3. The Defendant ROBERT ARTHUR WILSON ("Wilson") is a natural person, resident of Collin County, Texas, principal owner and operator of the Allstate Insurance Agency located at 3630 N Josey Lane, STE 240, Carrollton, Texas 75007 and can be served at 3590 Hickory Grove Lane, Frisco, Texas 75033.

4. Defendant THE ALLSTATE CORPORATION ("Allstate") is a Delaware corporation and can be served via registered agent The Corporation Trust Company, Corporation Trust Center 1209 Orange

Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

5. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

6. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

7. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

8. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that

could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 –

52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

22. Plaintiff has been on the National Do-Not-Call registry since December 2007.

23. Plaintiff has previously filed a Complaint against Allstate for unsolicited solicitation calls. Callr v. Allstate, Case No. EP-20-CV-00266-PRM, 2020 (W.D. Tex. Oct. 22, 2020).

24. Plaintiff began receiving more solicitation phone calls from Allstate less than two months after the settlement of Case No. EP-20-CV-00266_PRM. These calls continued for two months. Plaintiff settled the dispute over these calls without filing a complaint with the Court.

25. Plaintiff has asked Allstate repeatedly to not call Plaintiff and to distribute Plaintiff's phone number to its agents and to instruct those agents to not call Plaintiff.

26. Allstate's licensed and commissioned agents repeatedly call Plaintiff despite Plaintiff asking Allstate to instruct them to not call Plaintiff.

27. Allstate is aware of Plaintiff's desire to not be called by Allstate and Allstate's agents, and yet the calls persist.

28. On August 13, 2021, Plaintiff received yet another unsolicited call soliciting insurance.

29. Plaintiff answered the August 13, 2021 phone call and said "hello" multiple times before hearing an audible "beep" and being connected to a telemarketer. This telemarketer did not identify himself, the company for whom he worked, or on whose behalf he was making the call. The telemarketer did not know Plaintiff by name and had randomly been connected to Plaintiff via a random dialer.

30. It was not until Plaintiff was transferred by the telemarketer to an Allstate agent that Plaintiff knew on whose behalf the call had been placed.

31. Plaintiff was transferred to Allstate agent and/or employee Danny Cruces Godinez who solicited Plaintiff for auto insurance. Mr. Godinez emailed Plaintiff a personalized insurance quote on August 13, 2021, memorializing this interaction.

32. The car insurance quote came from the Allstate Agency owned and operated by Defendant Wilson.

33. Mr. Godinez made multiple direct phone calls to Plaintiff despite Plaintiff being on the National Do-Not-Call Registry displaying poor internal controls and a disregard for the TCPA.

34. Plaintiff took no legal action for these phone calls until Plaintiff began to receive even more phone calls from Allstate in February 2022.

35. On February 2, 2022, Plaintiff received yet another phone call from Allstate. Plaintiff received a phone call showing 321-510-6727 on the caller ID. Plaintiff answered the phone and said hello multiple times before hearing an audible "beep." Plaintiff was then connected to an agent who asked Plaintiff questions about his driving history and car insurance status. The agent then transferred Plaintiff to Allstate agent and/or employee who identified himself as "John."

36. John took Plaintiff's information and then later emailed Plaintiff an insurance quote that listed Michael Sheets as the Allstate and/or employee sending the quote. The quote came from the Allstate Agency owned and operated by Jonathan Crisler.

37. Through information and belief this is the same "John" who solicited Plaintiff for car insurance.

38. Each and every call from a telemarketer was initiated using a spoofed caller ID, and each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

39. Plaintiff received the following calls from the Defendants (Table A).

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 08/13/2021 | 10:48 AM | 915-383-3993 | Automated call from telemarketer – transferred call to Danny |
| 2 | 08/20/2021 | 11:04 AM | 214-324-7676 | Direct call from Danny |
| 3 | 08/26/2021 | 12:36 PM | 214-324-7676 | Direct call from Danny |
| 4 | 08/31/2021 | 11:17 AM | 214-324-7676 | Direct call from Danny |
| 5 | 02/02/2022 | 10:52 AM | 321-510-6727 | Automated call from telemarketer – transferred call to John |
| 6 | 02/02/2022 | 11:29 AM | 972-424-6175 | Text from Allstate |
| 7 | 02/02/2022 | 10:21 AM | 972-424-6175 | Direct call from John |
| 8 | 02/04/2022 | 9:29 AM | 972-424-6175 | Direct call from John |

40. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

41. Mr. Callier has a limited data plan. Incoming text messages chip away at his monthly allotment.

42. Mr. Callier has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

43. No emergency necessitated the calls

44. Each call was sent by an ATDS.

45. On information and belief, the defendant did not have a written do-not-call policy while it was sending Mr. Callier the unsolicited calls

46. On information and belief, the defendant did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

**THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA**

47. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS**

**48.** Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

**49.** Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

**50.** Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

**51.** Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

**52.** The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage space, reduced data plan usage, invasion of privacy, decreased cell phone

battery life, more frequent charging of my cell phone resulting in reduced enjoyment and usage, annoyance, frustration, and anger.

**The Plaintiff's cell phone is a residential number**

53. The calls were to the Plaintiff's cellular phone 915-383-4604 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## I. FIRST CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

**(Against All Defendants)**

1. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone number without his prior express written consent.

3. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

**II. SECOND CLAIM FOR RELIEF**

**(Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))**

**(Against All Defendants)**

6. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[2] and,

b. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[3]

8. Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

10. Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and name in the solicitations.

## III. THIRD CLAIM FOR RELIEF

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

11. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

13. Plaintiff was intentionally damaged at least eight (8) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

14. Plaintiff is entitled to an award of up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for eight calls.

E. An award to Mr. Callier of damages, as allowed by law under the TCPA;

F. An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

G. Such further relief as the Court deems necessary, just, and proper.

February 7, 2022

Respectfully submitted,

Brandon Callier
Plaintiff, Pro-se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com